## H. D. WATSON *v.* THE STATE.

1. JUDICIAL COGNIZANCE —VARIANCE. — This court judicially knows that there is a Criminal District Court for the counties of Galveston and Harris, and that the Hon. Gustave Cook is the judge thereof. When engaged in his judicial duties in Harris County, his proper official designation is judge of the Criminal District Court of Harris County. His official signature to an order, however, as "Judge, Criminal Dist. Court, Galveston and Harris Counties," did not impair the competency of the order as evidence in support of an allegation which described him as judge of the Criminal District Court of Harris County.

2. SUBORNATION OF PERJURY — EVIDENCE. — Accused was tried for attempting to induce a person to give certain false evidence at the impending hearing of a writ of *habeas corpus* awarded to one G. by the judge of the Criminal District Court of Harris County. The State offered in evidence an order of the judge who granted the writ, whereby the hearing of the

writ was transferred to the judge of the District Court of Harris County. To the admission of the order as evidence, the defence objected that it was irrelevant, and that the transfer ordered was without authority of law. But *held*, that the order was relevant to the allegation that the writ of *habeas corpus* was pending when the offence was alleged to have been committed, and that the transfer of the hearing of the *habeas corpus* was proper under the circumstances, and presented no objection available by the defendant in this case.

3. SAME. — In a trial ·for· attempting to induce a witness to testify falsely, it seems that the materiality of the solicited false testimony is a question which should be submitted to the jury, under proper instructions.

4. SAME — CHARGE OF THE COURT. — Indictment charged that the accused offered $150 to òne M. if he would give certain false testimony on the hearing of a writ of *habeas corpus* pending in behalf of one G. The evidence was to the effect that the accused told M. that G. would pay him that sum if he would testify as alleged. *Held*, that this evidence does not support the allegation that the offer was made by the accused himself, and the jury should have been so instructed, as part of the law applicable to the case made by the pleading and the evidence.

5. PLEADING. — Descriptive averments in an indictment, though unnecessarily particular, must be proved as made.

6. NEW TRIAL. — That a new trial will not be granted in order to afford the accused an opportunity to impeach a State's witness is now too well settled to admit of question.

7. PERJURY. — INDICTMENTS for perjury should specify the facts essential to the offence, to wit, (1) the judicial proceeding or due course of justice in which the oath was taken; (2) the lawful taking of the•oath; (3) the testimony given; (4) its materiality to the issue; and (5) its wilful falsehood.

APPEAL from the Criminal District Court of Harris. Tried below before the Hon. G. COOK.

The substance of the indictment is fully set out in the opinion. The jury found the appellant guilty, and assessed his punishment at four years' confinement in the penitentiary. The opinion clearly discloses such matters of fact as underlie the rulings made.

*Likens & Stewart*, ·for· the appellant. Upon examination of the statement of facts, it will be seen that the application for writ of *habeas corpus* ·by· W. ·L. Grissom was made to

Hon. Gustave Cook, judge of the Criminal District Court of Galveston and Harris Counties, and after the granting of the writ, and pending the examination thereunder, "the further consideration of the case" was, *by his consent,* transferred to Judge Masterson.

It is most respectfully submitted that this act on the part of Judge Cook, and the proceeding under and by authority of said order by Judge Masterson, was without the sanction of law or a single precedent in practice, and the introduction of any order or proceeding of Judge Masterson thereunder, in evidence in the trial of this cause, was error.

The powers of judges of all courts created by our organic law are specifically defined by the statutes passed for that purpose, and where the law stops the limit of judicial power is reached. The writ of *habeas corpus* is a "writ of right," and the time when and the person or judge to whom the party who is deprived of his liberty may make his application are matters of personal privilege and individual choice; and for the argument, at least, we may say in this instance, where there were at least two judges present in the county who might lawfully issue the writ, that election was made, and being made, it was the *right* of the party to whom the writ was granted to have his examination thereunder made by the judge granting it, or at least his consent to the order made by Judge Cook; and even if that had been made known to Judge Cook, and embodied in his order of transfer, we very much question the legal right of Judge Masterson to take cognizance of the writ unless the application for it had been made directly to him. Neither the organic nor statute law places any restrictions or limits upon the applicant for this writ as to time when, place where, and to whom to be made, of that class of judicial officers authorized to issue the writ; hence we conclude that, this being true, and that there is no express provision to be found in the law authorizing such transfer, the order

was a nullity and the proceedings thereunder were without the sanction of law, and should have been excluded when offered in testimony on the trial of this cause below.

Again, the third charge is certainly upon the weight of evidence, in this : it, in effect, sums up the evidence and assumes that certain facts have been proven, by detailing them in substantially the words and order in which the testimony was given by the witness, thereby effectually precluding the jury from considering any evidence tending to exculpate the accused.  See *Long* v. *The State*, 1 Texas Ct. App. 466 ; *Gibbs* v. *The State*, 1 Texas Ct. App. 12 ; *Searcy* v. *The State*, 1 Texas Ct. App. 440 ; *Johnson* v. *The State*, 1 Texas Ct. App. 609.

The eighth assignment is, that the court erred in refusing to grant the defendant a new trial.  The first ground of the motion for new trial is : " The verdict is unsupported by the testimony."  Let us see if the record will show that this position was well taken.  The defendant is indicted under article 297 of the Criminal Code, and article 1920 of Paschal's Digest, which reads : " If any person shall, by any means whatever, corruptly attempt to induce another to commit the offence of perjury, he shall be punished by confinement in the penitentiary for a term not less than two nor more than five years."  The very terms of this statute leads us to inquire, What is perjury?  It is defined to be " a false statement, either written or verbal, deliberately and wilfully made, relating to something past or present, under the sanction of an oath, under circumstances in which an oath is required by law, or is necessary for the prosecution or defence of any private right, or for the ends of public justice.  The oath or affirmation must be administered in the manner required by law, and by some person duly authorized to administer the same, in the matter or cause in which such oath or affirmation is taken."

An indictment against one for attempting to corruptly

induce another to commit perjury should, we think, specifically charge that the accused attempted to induce another to commit all the essential acts required to be done in the perpetration of the crime of perjury. Whether the indictment in this case does so is a matter for discussion hereinafter. But the indictment does charge certain specific acts against the defendant. It says that the defendant did " feloniously and corruptly offer said James Masters one hundred and fifty dollars if he, the said James Masters, would on said hearing, under said writ of *habeas corpus*, *swear and give evidence* that Dr. Brown (meaning said Joseph W. Brown) had a pistol in his hand at the time said William L. Grissom shot him." The manner and means by which the defendant is charged to have corruptly attempted to induce James Masters to commit perjury is here stated. We do not think the indictment is too particular in this regard. Indeed, we think more should, have been stated in order to make it a good indictment. But when the prosecutor states the offence with greater particularity than he is bound to do, the proof must correspond with the averments. *Warrington* v. *The State*, 1 Texas Ct. App. 173; *Williams* v. *The State*, 1 Texas Ct. App. 95; 1 Bishop's Cr. Law, secs. 234, 496; *The State* v. *Newland*, 7 Iowa, 242; *Murphy* v. *The State*, 28 Miss. 637.

The indictment does charge that the defendant did attempt to induce Masters " to swear and give in evidence." The law requires that the indictment should state at least this much. Now, we unhesitatingly declare that this averment is wholly unsupported by testimony. Nowhere in the record does it appear that Watson ever did attempt to induce Masters " to swear and give in evidence " any statement, of any character whatsoever, under the sanctity of an oath. Strike the testimony of Masters from the record, and there is no testimony upon which it will be pretended

that the defendant ought to be convicted.   Masters says no one heard the conversation between him and Watson, and we must look to his testimony alone to ascertain what that conversation was.   He says :  " He called me out, then, and told me that the man in jail would give me one hundred and fifty dollars if I would say that Dr. Brown had a pistol in his hand, and tried to shoot him first, when he shot him."   Upon cross-examination, he varied his statement a little, and testified that Watson told him " that the man in jail *said* he would give me one hundred and fifty dollars to say that Dr. Brown had a pistol in his hand when he shot him, and that was all he did say to me about money."

This witness Masters had testified ^before Judge Masterson, upon the application of Grissom for bail, and his testimony on said examination had been reduced to writing. The state introduced it upon this trial, and in that written statement of his evidence he says :  " He didn't tell he would give me a cent.   He said that the man in jail said I wouldn't lose anything by it.   He said the man would give me one hundred and fifty dollars if I would *say* that I saw Dr. Brown with a pistol," etc.

Giving to all the statements made by Masters in his testimony, deposed at different times, their full import, does it show that Watson ever asked him, or in any way attempted to induce him, to make said statement under oath?   Not once does Masters say that Watson ever said one syllable to him about testifying or making any statement about the killing of Dr. Brown, under the sanction of an oath, in any court, or before any one authorized to administer oaths. His testimony only shows that Watson asked him " to say " that Dr. Brown had a pistol, but when he was " to say " it, or where he was " to say " it, or how he was " to say " it, the testimony does not disclose.   He may have intended for him " to say " it upon a judicial investigation of Gris-

som's case, or he may have intended him " to say " it upon the street, in order to allay the great excitement that prevailed against Grissom at the time for the killing of Dr. Brown. We do not know what he intended, nor can we arrive at his intention in any other manner than that which may be discovered by the testimony. And when the testimony fails to disclose it, no presumptions can be indulged in behalf of the State to make out the case, and the State must make good the allegations made in the indictment by proof, which must correspond with the averments contained in the indictment.

If, in cases of perjury, it be essential to prove that the false statement was made under the sanction of an oath, legally administered, is it not an irresistible conclusion that, in the crime of corruptly attempting to induce another to commit perjury, it must be shown that one attempted to induce the other to make the false statement under the sanction of an oath, to be legally administered?

Again, the averment of the indictment is that the defendant did " feloniously and corruptly offer said James Masters one hundred and fifty dollars." The testimony of Masters (to which we objected as being irrelevant) is that Watson told him " that the man in jail would give me one hundred and fifty dollars," or " that the man in jail said he would give me one hundred and fifty dollars."

We respectfully submit that this testimony does not support or sustain the allegation of the indictment, that the defendant did " feloniously and corruptly offer said James Masters one hundred and fifty dollars." The word " offer," like many other words, has different meanings or significations, as it may be differently employed; and to correctly define such a word, we must not fail to observe the use to which it has been appropriated.

" Except where a word, term, or phrase, is specially defined, all words used in this Code are to be taken and con-

strued in the sense in which they are understood in common language, taking into consideration the context and subject-matter relative to which they are employed." Code Cr. Proc., art. 28 (Pasc. Dig., art. 1630).

The rule laid down in our Criminal Code for the construction of statutes will do as well for the construction of language employed in indictments. Taking the word "offer," as here employed, and, considering the context and subject-matter relative to which it is employed in common language, can it mean anything else than a presentation, or a readiness averred to present the witness, at the very time, one hundred and fifty dollars?

In Webster's Unabridged Dictionary we find the word "offer" defined as follows: "Literally, to bring to or before; hence, to present for acceptance or rejection; to exhibit something that may be taken or received, or not. He offered me a sum of money; he offered me his umbrella, to defend me from the rain."

In this case the offer charged to have been made was of a sum of money, and such sum of money was not presented "for acceptance or rejection." The negro witness, Masters, has, we think, a correct knowledge of what is meant by offering a sum of money, and he exhibited his knowledge on this subject when, in his testimony, he said: "He did not tell me he would give me a cent."

That the motion for a new trial should have been overruled in this case of remarkable rulings is, perhaps, the most singular feature presented by the whole record; and when considered in connection with the facts, and in the light of well-settled principles and practice; when it is analyzed and understood in, as it seems to us, the only mode and manner that human reason can fairly employ, it strikes us as wellnigh impossible for this court to deny the appellant the reversal he asks here, upon the amended and supplemental motion above. The record will disclose that

four days after the conviction of the appellant, the witness
Jim Masters, a negro, upon whose testimony the conviction
was had, prepared and mailed to Watson a letter, proposing,
for the consideration of $250, to absent himself and not
testify in the case.    It is true the letter refers to him in the
third person, but the affidavit of Stauffer establishes the
fact beyond question that it was handed to Stauffer by
Masters himself, with the request that he would direct it,
which Stauffer did, and deliver it to Masters.    When we
consider the contents of the letter itself, and the proof of
Masters in connection with it, the conclusion is irresistible
that he prepared it himself, or procured it to be done.    But
to remove all possible doubt, if, indeed, any could exist, as
to the paternity of the document, we have the affidavit of
Mr. Henry C. Thompson, a most reputable gentleman,
that on October 26th, three days after the date of the
letter, Masters approached him, as the supposed friend of
Watson, and again makes the proposition to absent himself
for a consideration, and this time for a less price, say $150.
We have also the affidavit of W. B. Paris, the jailer, clearly
and unmistakably identifying the letter of Masters, attached
to the motion, as also the affidavit of Stauffer, who directed
it at the request of Masters, all of which fixes its identity
beyond doubt.

Now, what is presented by this record as against the
amended and supplemental motion for a new trial?    Nothing
but the unsupported affidavit of the witness, who proves
himself unworthy of belief by having expressed, not only
his willingness, but anxiety, to bargain for the privilege of
failing to swear the truth.    Will it be, can it be, doubted
for one moment that a man who will, for money, close his
mouth to the truth, will just as readily, for purposes of
black-mail, revenge, or other villainous motive, open it
wide to perjury?    Can a reasonable doubt be indulged that
the testimony of such a witness is not entitled to a

moment's credence; that a jury of intelligent men would refuse to convict upon the evidence of such a self-declared scoundrel? Surely not. Then, if the circumstances disclosed by the motion for new trial and appendant affidavits did, or would, if known at the trial, impeach and discredit the testimony of Masters; and such facts and circumstances were not, and could not have been known at the trial, because they had not transpired, was it not the duty of the honorable judge to have granted the prayer of the motion; and would not the promptings of simple justice have been better heeded by permitting other "twelve good and lawful men" to weigh well the testimony of such a witness before depriving their fellow-citizen of his liberty, and consigning to lasting infamy his name?

It was impossible for appellant, as the court will see and necessarily observe from an examination of the amended and supplemental motion for a new trial, to have procured the testimony therein relied upon before or on the trial, for the circumstances had not then transpired, and, of course, no amount of diligence could have procured the knowledge. It is admitted that in the civil practice it is but rarely permitted to grant a new trial on the ground of newly discovered evidence, where the object of such evidence is to impeach the credit of a witness, but it is respectfully submitted that no such rigidity obtains where the life or liberty of a citizen is involved. And if it did, the rule would be without reason, and therefore would not be law, that a party should be held to the procurement of a knowledge of facts, for any purpose whatever, to discredit a witness or otherwise, which had not been called into existence at a time when, if known, they could have been used as a defence. So, then, we have the testimony of Stauffer, Paris, Thompson, and Masters unimpeached, against the affidavit of Masters, who is self-convicted of a willingness to refuse to swear the truth for a price in money.

To the eighth ground in the motion to arrest we will venture again to call the attention of your honors particularly, as in which, it seems to us (and in all candor we express the opinion), if none other existed, is found ample reason to entitle the appellant to a reversal of the judgment herein. The indictment does not show by any averment that James Masters was a witness of the killing of Joseph W. Brown, under the writ of *habeas corpus,* nor does it show or aver that he was ever *sworn* as a witness in the examination of W. L. Grissom, under the writ, both of which averments it was absolutely necessary should have been made and sustained by proof to have made out the offence with which the appellant was attempted to be charged by the indictment.

*George McCormick,* Assistant Attorney-General, and *F. M. Spencer,* for the State.

WINKLER, J.  The indictment upon which the appellant was tried charges " that, on the twenty-seventh day of the month of May, in the year of our Lord one thousand eight hundred and seventy-seven, in the county of Harris, and State of Texas, one William L. Grissom had been duly and legally charged with the murder of· Joseph W. Brown, and had been, by Coroner William A. Daly, committed to the jail of Harris County, without bail, to answer said charge of murder; that, on the twenty-sixth day of the said month of May, in the year aforesaid, the said William L. Grissom sued out a writ of *habeas corpus* before the Honorable Gustave Cook, the duly and legally appointed and qualified judge of the Criminal District Court of Harris County, with full power and authority to issue said writ of *habeas corpus;* and the grand jurors aforesaid, upon their oaths aforesaid, do further present that thereafter, to wit, on the twenty-seventh day of the month of May, in the year aforesaid, one H. D. Watson, late of the county aforesaid, in the said

county of Harris, and State of Texas, before the hearing under *habeas corpus* was had, but while the same was pending, wickedly contriving and intending to prevent the due course of law and justice, and unjustly to procure the discharge and bail of said William L. Grissom, then, on the said twenty-seventh day of the month of May, in the year aforesaid, in the county aforesaid, unlawfully, feloniously, and corruptly did attempt to induce James Masters to commit the offence of perjury; and that the said H. D. Watson, on the day and year last mentioned, in said county of Harris, did feloniously and corruptly attempt to induce said James Masters to commit wilful and deliberate perjury on the hearing of the said *habeas corpus*, and did then and there, on said last-mentioned day and year, feloniously and corruptly offer said James Masters one hundred and fifty dollars if he, the said James Masters, would, on said hearing under said writ of *habeas corpus*, swear and give in evidence that Doctor Brown (meaning said Joseph W. Brown) had a pistol in his hand at the time said William L. Grissom shot him, it then and there being a material question on said hearing whether said Joseph W. Brown was the aggressor; whereas in truth and in fact said Joseph W. Brown did not have a pistol in his hand at the time said William L. Grissom shot him; and that he, the said H. D. Watson, then and there well knew that said evidence he was corruptly attempting said James Masters to swear and give in evidence on the hearing of said writ of *habeas corpus* was false; contrary to the law, and against the peace and dignity of the State.''

The indictment is based upon *article* 297 of the Penal Code (Pasc. Dig., art. 1920), which is as follows : '' If any person shall, by any means whatever, corruptly attempt to induce another to commit the offence of perjury, he shall be punished by imprisonment in the penitentiary, not less than two nor more than five years.''

It is neither expedient nor essential to a proper determination of the merits of this appeal that we should attempt, *seriatim*, a discussion of the several novel and interesting questions presented in the several bills of exception set out in the record, and the several grounds set out in the motions for a new trial and in arrest of judgment. The want of time forbids that we should do more than state conclusions as to the vital questions arising upon the record, and upon which a decision depends.   This it is proposed to do in the order and to the extent necessary, as we find them set out in the appellant's assignment of errors, which he alleges were committed on the trial below, and which he contends are of sufficient importance to require a reversal of the judgment of conviction rendered against him.

The first error assigned is, that the court erred in admitting in evidence the petition of W. L. Grissom and the order of Judge Cook thereon, and the papers attached thereto, and to the admission of which the defendant objected on the ground, " because it went to sustain no allegation made in the indictment, and because the order grants the writ by a different judge than the one named in the indictment." It will be seen by reference to the indictment that the man Grissom had been charged with the murder of Joseph W. Brown; that he had been committed on the charge, and that Judge Cook, the duly appointed judge of the Criminal District Court of Harris County, had granted a writ of *habeas corpus;* and the bill of exceptions shows that the writ had been granted, requiring the production of the petitioner at a time and place named, that an inquiry might be made into the authority by which he was held.

In the indictment the officer is described as the " Honorable Gustave Cook, the duly and legally appointed and qualified judge of the Criminal District Court of Harris County." In the instrument offered in evidence, the *fiat,* he signs himself " Gustave Cook, Judge, Criminal Dist.

Court, Galveston and Harris Counties.'' We are of opinion that the evidence was admissible, as tending to support the allegation in the indictment that the *habeas corpus* proceeding had been instituted before competent authority, and that there was no material variance between the style of the officer set out in the indictment and that set out in the evidence.

It is judicially known to this court that there is a criminal court for the counties of Galveston and Harris, and that Hon. Gustave Cook is the judge of that court, and is required by law to hold terms of his court at stated times in each of those counties. When discharging the duties of his office in Galveston County, he would be properly styled judge of the Criminal District Court of Galveston County, and when performing those duties in Harris County, he would properly be styled judge of the Criminal District Court of Harris County. The court over which he presides is denominated the *Criminal* District Court, in contradistinction to the older and well understood District Courts, which we also know sit in Harris and in Galveston Counties, and all over the State; and when he is mentioned in that sense it would only be necessary to style him as judge of the *Criminal* District Court, and it would depend entirely, as to which county should be added, to consider which county the duty was required in. He is properly described as *judge of the Criminal District Court.*

The second assignment is, that the court erred in permitting to be read to the jury the order of Judge Gustave Cook transferring the application of W. L. Grissom for bail to the Hon. James Masterson, judge of the Twenty-first Judicial District, for hearing and determination, as is shown by defendant's bill of exceptions number two, and for the reasons therein stated.

The order objected to is set out in the bill of exceptions, and, after stating the style of cause, is as follows:

" Charged with the murder of J. W. Brown, in Harris County, on the 25th day of May, A. D. 1877. Committed by W. A. Daly, Esq., justice of the peace, and now produced before Gustave Cook, judge of the Criminal District Court of Galveston and Harris Counties, by Cornelius M. Noble, sheriff of Harris County, upon the order of said judge, on application of petitioner.

" It appearing that the State is not ready to proceed, and the duties of the undersigned requiring his presence officially in Galveston, it is ordered, by the consent of the Hon. James Masterson, district judge, that the further consideration of the case be transferred to him ; and the sheriff is ordered to have the prisoner, with the witnesses, before him *instanter*, at the court-house of Harris County. This May 26th, 1877.

" [Signed]                    Gustave Cook,
                    " Judge Criminal Dist. Court."

The objection taken to the introduction of this order in evidence is " because the law did not authorize such a transfer of the *habeas corpus* proceedings, and because the evidence was irrelevant, and did not prove any allegation contained in the indictment."

The questions arising on this assignment are : First, Was the evidence admissible under the pleadings? and, second, Had Judge Cook authority to transfer the *habeas corpus* proceedings to the judge of the District Court for hearing and determination? As to this latter proposition, we may remark that we are unable to see plainly how the question of the right and power to transfer arose in the manner here presented ; yet, inasmuch as it is a part of the record-history of the case, and necessary to dispose of it at some stage of the consideration of the case, it may be as well to meet it here as elsewhere. These questions are not free from difficulty in their determination, especially the latter. We have been afforded but little aid from elementary works

or reports of adjudicated cases, and on some of the matters involved the court has not been able to fully concur ; still, in the opinion of a majority of the court, the first question must be answered in the affirmative, on the ground that it is averred in the indictment that the proceeding in which the attempt to corrupt the witness is alleged was *still pending* at the time of the alleged commission of the offence by this appellant, — that it is only material that it was so pending before a judge having jurisdiction of the proceeding in which the attempted subornation was made. In other words, that in this connection it was only material that the indictment should show a legal proceeding pending at the time. As to the second question, we have seen no rule of law which was violated by the transfer, and, in the opinion of a majority of the court, there was no error committed in the transfer, under the circumstances set out in the order of transfer, of which the appellant can be heard to complain.

What has been said under this assignment must be held to apply to and be decisive of the question of authority to transfer, wherever it arises upon the record.

The third assignment of error, as well as the fifth, sixth, and seventh, call in question the correctness of the charge of the court, and embrace the eighth, ninth, tenth, and eleventh grounds set out in the motion for a new trial, and the corresponding bills of exception. We deem it proper to ask the consideration of the court, on another trial, whether the materiality of the testimony attempted to be procured by corrupting the witness Masters should not have been left to the jury, under an appropriate instruction. This is the only comment we have to make upon the main charge at present.

The following additional instruction was asked by the accused, to wit:

" That the State must prove by satisfactory evidence the

offence charged and specifically set forth in the indictment, and to do this the State, by testimony, must satisfy the minds of the jurors that the defendant, in the county of Harris, on or about the time charged in the indictment, did feloniously and corruptly offer said James Masters one hundred and fifty dollars if he, the said James Masters, would on said hearing, under said writ of *habeas corpus,* swear and give in evidence that Dr. Brown had a pistol in his hand at the time said William L. Grissom shot him; that the jury must be satisfied from the testimony that the defendant did make the offer of one hundred and fifty dollars himself, and not that he said some one else would pay it."

This instruction was refused, and the accused took a bill of exceptions. The legal propositions assumed in the refused instruction are (1) that the State was required to prove the offence charged as it is described in the indictment; (2) that it would not support the allegations in the indictment by proving that some person other than the accused offered to pay the money proposed to be used in corrupting the witness.

The rule, as stated by Mr. Greenleaf, and often quoted, is: " When a person or thing necessary to be mentioned in an indictment is described with unnecessary particularity, all the circumstances of description must be proved, for they are all made essential to the identity." 1 Greenl. on Ev., sec. 65. This rule has been substantially followed, so far as we are advised, uniformly, both by the Supreme Court and this court. *Hill* v. *The State,* 41 Texas, 253; *Rose* v. *The State,* 1 Texas Ct. App. 400; *Courtney* v. *The State,* 3 Texas Ct. App. 257; *Sweat* v. *The State,* 4 Texas Ct. App. 617; *McGee* v. *The State,* 4 Texas Ct. App. 625; 1 B'shop's Cr. Proc., sec. 486, which see for the rule and examples of variance between the allegations and proof, where it is said: " The illustrations of this general

doctrine to be found in the books are almost endless."
The questions we have heretofore been considering, when
compared with the ones here presented, are of compara-
tively little moment. It is of vital importance to one on
trial for a felony that the law applicable to his case should
be given in charge to the jury, it being their bounden duty
"to receive the law from the court, and be governed
thereby." Penal Code, art. 523 (Pasc. Dig., art. 3058).

It will be seen from an inspection of the record that the
general charge given by the court embraces and covers all
the grounds set out in the charge which was refused; not
in the same language, it is true, nor in the same consecutive
order; nor was this required. Yet they amounted substan-
tially to the same as the refused charge, *except* the conclud-
ing paragraph of the latter, as follows: "That the jury
must believe from the testimony that the defendant did
make the offer of the one hundred and fifty dollars him-
self, and not that he said some one else would pay it."

In the charge given this is the language used: "With the
intent corruptly to induce James Masters to make such
statement in evidence, under oath, upon the hearing, * * *
say to James Masters that Grissom would give him (James
Masters) one hundred and fifty dollars to make the state-
ment under oath," etc.

The charge in the indictment is, not that the defendant
said that Grissom would give the money, but that H. D.
Watson offered the money. The effect of the charge given
is, that proof that Grissom said he would give $150 if the
witness would swear as desired would support the allega-
tion in the indictment that the defendant offered the money.
This, we are of opinion, upon the authority above cited, was
error, and that such proof as that in the charge indicated
would not support the descriptive averment in the indict-
ment, which sets out the means employed by the accused to
procure the corrupt and false testimony.

We are of opinion that the pleader, in stating the means used in the effort to corrupt the witness with the particularity used in setting it out, made it incumbent on the State to prove it, at least substantially, as laid in the indictment. Whether it was necessary to charge the offence with such particularity, or not, is not now the question. What we hold is that the pleader, having stated the means employed in order to effect the criminal purpose, he must prove it as alleged. If we look to the evidence, it will be apparent that this instruction was manifestly prejudicial to the rights of the defendant. The charge of the court should have submitted to the jury the law of the case as made by the pleadings and the evidence. This he failed to do, which was error, and for this error the judgment must be reversed.

We are of opinion that there was no error in the rulings of the court upon the evidence as set out in the first assignment of error, and mentioned in bill of exception number four.

So far as the action of the court in refusing a new trial in order to permit the accused to impeach the prosecuting witness is concerned, and set forth in the eighth assignment of errors, we are of opinion there was no error. That a new trial will not be granted upon this ground is now too well settled to require a reference to authorities. For the foundation upon which the rule rests, see Whart. Cr. Law, sec. 3161; 1 Arch. Cr. Pr. & Pl. 118, sec. 126; *Terry* v. *The State,* 3 Texas Ct. App. 236, and cases there referred to. To unsettle this rule, and permit a party to obtain a new trial, after conviction, in order to procure testimony to impeach the witness on whose testimony a conviction was had, would be to open wide the doors leading to the commission of the too frequent crime of perjury; none other than an extraordinary case would warrant it.

One other subject requires to be noticed, to wit, the sufficiency of the indictment, which is questioned in the ninth

assignment of errors and in the motion in arrest of judgment. We have considered the several grounds set out in the motion in arrest of judgment, and believe they are not tenable.

An indictment for perjury, says Mr. Greenleaf, should specify the facts essential to this offence, namely: First, the *judicial proceedings* or *due course of justice* in which the oath is taken; second, the oath lawfully taken; third, the testimony given; fourth, its materiality to the issue or point in hand; and, fifth, its wilful falsehood. 3 Greenl. on Ev., sec. 189. Varying the circumstances to suit this case, and testing the indictment thereby, it must be held to meet the requirements. It contains all required by article 395 of the Code of Criminal Procedure (Pasc. Dig., art. 3863). The offence is set out with such certainty that a conviction or acquittal under it could be successfully pleaded in bar of another prosecution for the same offence, which is all the certainty required. Code Cr. Proc., art. 328 (Pasc. Dig., art. 2865). "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offence," is the language of the Code.

We are of opinion that there was error in the charge of the court, and on account thereof a new trial should have been awarded. For this error the judgment is reversed and the cause remanded.

*Reversed and remanded.*